UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ANTHONY C. MARTIN,<br><br>Plaintiff,<br><br>v.<br><br>JOHN GAILPEAU, et al.,<br><br>Defendants. | CAUSE NO. 3:19-CV-994-JD-MGG |

OPINION AND ORDER

Anthony C. Martin, a prisoner without a lawyer, filed an amended complaint (ECF 4) naming fifteen defendants and making numerous allegations about events that occurred in September and October of 2019. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

As a preliminary matter, Martin indicates in his amended complaint that various Indiana Department of Correction policies have been violated by the defendants, but policy violations do not equate to constitutional violations. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("However, 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental

regulations and police practices."). Thus, his assertions that various polices were violated do not state claims and will not be addressed further.

Martin alleges that, on September 20, 2019, he was found guilty of a disciplinary violation. Martin further alleges that the DHO had to find him guilty because Assistant Warden Kenneth Gann directed him to do so. As a result, a security risk management order was placed on Martin. He was prevented from having any recreation or exercise outside of his cell. Martin, however, has not indicated what offense he was charged with, what the conduct report alleged, what evidence the DHO relied upon in finding him guilty, or whether he was deprived of any earned credit time as a result of the finding of guilt. Furthermore, Martin does not have a protected liberty interest in a particular security classification. Due process is only required when punishment extends the duration of confinement or imposes "an atypical and significant hardship on him in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). *See also DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) ("[P]risoners possess neither liberty nor property in their classifications and prison assignments."). Martin has not alleged a change in classification that is either an "atypical" or "significant" hardship in relation to the ordinary incidents of prison life. Thus, he may not proceed against Assistant Warden Gann.

Martin filed a grievance (about the hearing or the lack of recreation – it is not clear which) and Grievance Specialist John Harvill rejected it. He asked Caseworker Mrs. M. White for help, and she did not help. Martin filed a second grievance that was also rejected. He then filed a grievance against Grievance Specialist Harvill for rejecting

his grievance. When that was rejected, he filed a grievance with Warden John Galipeau. The warden did not respond. "Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause, and so the alleged mishandling of . . . grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Thus, Martin may not proceed against Grievance Specialist Harvill, Caseworker White, or Warden Galipeau for their roles in processing (or failing to process) these grievances.

When his attempts at filing grievances failed, Martin addressed his concerns with Caseworker White again. Caseworker White indicated that she would talk with her supervisor, Unit Manger Mr. John Salyer. Several days later, Mrs. White brought Martin some unit team evaluation papers for him to sign. But, some of the dates on the papers were inaccurate. When Martin refused to sign, Caseworker White became upset. Martin believes that signing the documents as they were would have prevented him from appealing a classification decision. Martin contacted Unit Manager Salyer, and Unit Manager Salyer assured Martin it would not happen again. Martin filed a grievance against Caseworker White for what he describes as fraud. Caseworker White and Unit Manager Salyer sought a facility transfer within the week. Martin alleges that this amounts to retaliation. "To prevail on his First Amendment retaliation claim, [Martin] must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants'

decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotation marks and citations omitted). Being transferred to another facility is not the kind of deprivation that would likely deter future First Amendment Activity. Therefore, these allegations do not state a claim.

On October 3, 2019, Martin was called to the lieutenant's office to watch a DVD containing discovery for another lawsuit. Martin questioned why custody was presenting him with the opportunity to watch the DVD instead of law library staff or the litigation liaison. Captain Lewis told him to shut up and watch it or go back to his cell. Lt. Herr then compared Martin to the "little punks" he was used to seeing in Indiana State Prison, who would "cry to the court" when they "get their feathers ruffled." ECF 4 at 7. Sgt. Reid grabbed Martin's shoulders and forced Martin to sit down. Unit Manager Salyer walked in and told Martin that they do things differently at Westville. Martin was then warned (it is unclear by who) that he had better watch out because they have a plan for him. Captain Lewis and Unit Manager Salyer told Lt. Herr that Martin was on Assistant Warden Gann's "shit list." ECF 4 at 8. Martin further alleges that, after that comment was made, Lt. Herr and Sgt. Reid suddenly lifted Martin off his feet and shoved his head into a wall. Captain Lewis applied pressure to Martin's ear and temple, while Sgt. Reid twisted and tugged at his right shoulder. Martin indicates that he was asked if he understood that they could do what they wanted. He said yes, and he was taken back to his cell. The "core requirement" for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm."

4

*Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009). Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the amount of force used, and the extent of the injury suffered by the prisoner. *Id.* Martin's allegations, when accepted as true, state a claim against Lt. Herr, Sgt. Reid, and Captain Lewis.[1]

Beginning on October 14, 2019, Martin found that his cell was cold. He directed grievances to several people. In response, he was told that the heat was controlled by "down state," and would not be turned on until November 15, 2019. After complaining for several days without relief, on October 18, 2019, Martin asked for a sergeant or supervisor. The hatch was opened for him to get his tray when Officer Halcarz arrived and immediately used his Taser on Martin. Martin hit his head on the wall and lost consciousness. Halcarz then closed the food tray on Martin's hand, injuring his wrist and hand. These allegations state an excessive force claim against Officer Halcarz.

Sgt. Grasser arrived, saw Martin's bleeding hand, and said he would take Martin to medical. He was placed in handcuffs to be escorted to the medical department even though his hand was injured. These allegations do not demonstrate that Sgt. Grasser was deliberately indifferent to Martin's medical needs, and Martin will not be permitted to proceed against him.

Once he arrived in the medical department, Martin was met by Warden Galipeau, Major Cornett, Unit Manager Salyer, Sgt. Reid and Captain Lewis. They all

---

[1] Martin filed a grievance about these issues, but it was rejected. He resubmitted the grievances and it was again rejected. As explained previously, failure to process a grievance does not state a claim.

5

watched as Nurse Purdue examined Martin. Martin alleges that Nurse Purdue could not get a temperature reading because he was so cold and could not get a blood pressure reading because his blood pressure was so high. Nurse Purdue asked if Martin could be unhandcuffed, but Captain Lewis said no. Martin then asked Warden Galipeau if he was going to sit there and watch Captain Lewis deny him medical attention. He put his head down and walked away. Major Cornett said he was not going to rescind the captain's orders and walked away. Captain Lewis reiterated that if Nurse Purdue could not examine Martin in cuffs then he should be returned to his cell. Unit Manager Salyer and Sgt. Grasser were asked to intervene, but they indicated that the matter was out of their control. Captain Lewis said that he "runs the show" and ordered that Martin be returned to his cell. These allegations do not state a claim. Martin was taken to the medical department because his hand was bleeding, and the nurse could examine his hand while in cuffs even if unable to take Martin's temperature or blood pressure. He has not alleged deliberate indifference to a serious medical need.

Once Captain Lewis ordered that Martin be returned to his cell, Sgt. Reid placed Martin in a tight choke hold even though he was handcuffed and shackled. Sgt. Reid loosened his grip and they began to head back to Martin's cell. Captain Lewis then ordered Sgt. Reid, Officer Harrington, and Officer Hendrix to strip out Martin's cell and leave nothing. Martin was left with only one sheet and one blanket. Martin may proceed against Sgt. Reid on an excessive force claim.

On October 21, 2019, Martin asked Sgt. Speigal for medical care for his wrist. He was told that he had to put any request in writing. He asked for internal affairs, so he

6

could complain, but he was again told to put it in writing. Martin then told Sgt. Speigal that he was going to file a grievance against him. Sgt. Speigal told Martin that he doesn't "run the show" and walked off while laughing. While Martin may have preferred that Sgt. Speigal handle his requests differently, requiring Martin to put his request for non-emergency medical care in writing did not violate the Constitution.

On October 22, 2019, Grievance Specialist Harvill, Warden Galipeau, Major Cornett, and Captain Lewis told Martin that they had decided they would no longer accepted grievances from him due to his abuse of the grievance system. He tried to ask about medical care, the temperature in his cell, and how long he would remain on strip cell. He was told that the more he asked, the longer he would remain. For the same reasons that it is not unconstitutional to fail to process a grievance, it is not unconstitutional to prevent an inmate from filing grievances altogether.

Ultimately, Martin was limited to a sheet and blanket for eight days, he went without a shower for sixteen days, and he was deprived of recreation outside of his cell for seventy-five days. Martin indicates that it was Captain Lewis that controlled how long these restrictions were in place. The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). "[T]he Constitution does not mandate comfortable prisons...." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Conditions that merely cause inconveniences and discomfort or make confinement unpleasant do not rise to the level of constitutional violations. *Adams v. Pate*, 445 F.2d 105, 108-109 (7th Cir. 1971). Giving Martin the benefit of the inferences to which he is entitled at this early

7

stage of the case, he has alleged a claim against Captain Lewis for denying him clothing and a shower. However, Martin has not alleged that he was deprived of all physical activity. Though a total lack of exercise would state a claim where "movement is denied and muscles are allowed to atrophy," *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985), the denial of "desirable, entertaining diversions . . . [do] not raise a constitutional issue," *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988).

> Recreation and the ability to obtain physical exercise have been properly recognized as important human needs. See, *e.g., Davenport v. DeRobertis*, 844 F.2d 1310, 1315–16 (7th Cir.1988). However, there is no constitutional right to a specific form of recreation. Rather, only the objective harm that *can* result from a significant deprivation of movement implicates the Eighth Amendment. *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir.1985) (the Eighth Amendment is implicated where a denial of exercise causes the muscles to atrophy and threatens the health of the individual).

*Douglas v. DeBruyn*, 936 F. Supp. 572, 578 (S.D. Ind. 1996). Thus, merely alleging that he was denied access to recreation time does not state a claim.

Martin further alleges that, on November 1, 2019, Officer Halcarz filed a false conduct report against him that allegedly stemmed from the events of October 18, 2019, in retaliation for Martin complaining about Officer Halcarz's behavior. Martin again has provided no detail. The amended complaint does not indicate when or to whom Martin complained, what offense he was charged with, what facts the conduct report alleged, how the allegations were false, if he was found guilty, or what penalties were imposed. Martin cannot proceed against Halcarz on the mere assertion that he filed a false conduct report. Furthermore, this allegation does not state an independent cause of action. "[P]risoners are entitled to be free from arbitrary actions of prison officials, but ...

8

even assuming fraudulent conduct on the part of prison officials, the protection from such arbitrary action is found in the procedures mandated by due process." *McPherson v. McBride*, 188 F.3d 784, 787 (7th Cir. 1999).

Martin's amended complaint names Officer Lavarshee as a defendant, but it does not make any specific allegations against Officer Lavarshee. Accordingly, Officer Lavarshee must be dismissed.

The amended complaint seeks injunctive relief, but Martin was transferred to a different facility shortly after the amended complaint was filed. "If a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless he can demonstrate that he is likely to be retransferred." *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996). Here, there is no reason to believe that Martin is likely to be transferred back to Westville, and injunctive relief is therefore not available.

Finally, Martin asks that criminal charges be brought against several of the defendants he has named in his amended complaint. But Martin is not entitled to a criminal investigation of those he alleges have engaged in wrongful conduct. *Lee v. Kennedy*, No. 19-CV-1277, 2019 WL 5196372, at *1 (C.D. Ill. Oct. 15, 2019) ("Further, Plaintiff does not have a freestanding constitutional right to the investigation into another's alleged wrongful activity.") (citing *Rossi v. City of Chicago*, 790 F.3d 729, 735 (7th Cir. 2015)).

For the foregoing reasons, the court:

9

(1) GRANTS Anthony C. Martin leave to proceed against Lt. Herr, Sgt. Reid, and Captain Greg Lewis in their individual capacities for monetary damages for allegedly using excessive force against him on October 3, 2019, in violation of the Eighth Amendment;

(2) GRANTS Anthony C. Martin leave to proceed against Officer Halcarz in his individual capacity for monetary damages for using excessive force against him on October 18, 2019, in violation of the Eighth Amendment;

(3) GRANTS Anthony C. Martin leave to proceed against Sgt. Reid in his individual capacity for monetary damages for using excessive force against him on October 18, 2019, in violation of the Eighth Amendment;

(4) GRANTS Anthony C. Martin leave to proceed against Captain Greg Lewis in his individual capacity for monetary damages for depriving him of clothing for eight days and showers for seventeen days, in violation of the Eighth Amendment;

(5) DISMISSES all other claims;

(6) DISMISSES Warden John Galipeau, Assistant Warden Kenneth Gann, Major Cornett, Unit Manager Mr. John Salyer, John Harvill, Mrs. M. White, Sgt. Grasser, Sgt. Speigal, Officer Harrington, Officer Lavarshee, and Nurse Purdue;

(7) DIRECTS the clerk to request Waiver of Service from (and if necessary, the United States Marshals Service to serve process on) on Lt. Herr, Sgt. Reid, Captain Greg Lewis, and Officer Halcarz at the Indiana Department of Correction with a copy of this order and the amended complaint (ECF 4), pursuant to 28 U.S.C. § 1915(d);

(8) ORDERS the Indiana Department of Correction to provide the United States Marshal Service with the full name, date of birth, social security number, last employment date, work location, and last known home address of any defendant that does not waive service, if they have such information; and

(9) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), Lt. Herr, Sgt. Reid, Captain Greg Lewis, and Officer Halcarz to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on November 2, 2020

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT